**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **STICKER SYNERGY CORPORATION, et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-2521** |
| **BRUCE GWYN, et al.** | **SECTION: "G"(4)** |

## ORDER AND REASONS

This litigation arises from a dispute regarding Plaintiffs Sticker Synergy Corporation's and Baker Energy LLC's (collectively, "Plaintiffs") investment in two oil wells in northern Louisiana. Plaintiffs assert that Defendants made false statements in the course of obtaining their investment in these wells, and have failed to properly make payments on their interest in the wells after securing their investment. Presently before the Court is Plaintiffs' "Motion for Remand and for Attorney's Fees."[1] Having considered the motion, the opposition, the record, and the applicable law, the Court will grant the motion in part and deny the motion in part.

## I. Background

### A. *Factual Background*

In their state court petition, Plaintiffs contend that in July 2012, Defendant Richard Weyand corresponded with them in order to obtain their investment in (1) two oil wells located in northern Louisiana and (2) stock in Defendant Treaty Energy, Corporation.[2] Plaintiffs aver that Weyand, who is "believed" to have been paid for his work on the investments in question, shared various documents with them, represented himself as Defendants' investment banker, and coordinated a

---

[1] Rec. Doc. 7-1.

[2] Rec. Doc. 1-3 at pp. 3-4.

meeting between Plaintiffs and Defendants.[3] Plaintiffs further maintain that Defendants Vincent Reid and Ronald Lee Blackburn participated in meetings with them regarding these investments.[4] According to Plaintiffs, Defendants represented that the two oil wells in question were "currently producing," and could be expected to realize a return of between $3,000 and $4,000 per month in the near future.[5]  Further, Plaintiffs contend, Defendants represented that the price of Treaty stock was expected to increase more than fifty cents per share.[6] Plaintiffs contend that they each paid $65,000 to Defendant Rampant Leon to purchase a working interest in the wells.[7] According to Plaintiffs, Sticker also paid $65,000 to purchase shares of treaty stock, while Baker paid $10,000 for a smaller number of shares.[8]

Plaintiffs aver that Defendants' representations regarding the returns on Treaty stock proved untrue, as did certain representations made by Reid and Blackburn regarding payment from production of the wells and the use of production-enhancing equipment at the wells.[9] Plaintiffs maintain that Reid and Blackburn knew that their representations were false, and in fact had no intention of paying them as provided in their investment contracts.[10] Indeed, Plaintiffs contend, they have only received $700 in payment based upon their working interest in the wells, notwithstanding

---

[3]  *Id.*

[4]  *Id.* at p. 4.

[5]  *Id.*

[6]  *Id.*

[7]  *Id.*

[8]  *Id.* at pp. 4–5.

[9]  *Id.* at p. 5.

[10]  *Id.*

2

Defendants' representations that the wells have been in production and generating income.[11] Plaintiffs argue that Defendants have offered untrue justifications for their delay in making payments to them, and have further misrepresented that the price of Treaty stock would rise.[12]

Therefore, Plaintiffs maintain, Defendants have misrepresented and omitted material facts in order to secure their investment and to induce them to hold the investments.[13] In doing so, Plaintiffs assert, Defendants Reid, Blackburn, Weyand, and Bruce Gwyn (who was allegedly the President and Chief Operating Officer of Treaty at all relevant times[14]) acted beyond the scope of their authority as agents of Defendants Rampant Leon, Treaty, or RLFC Buckelew Energy, which is alleged to be a Louisiana LLC established to conduct business related to the wells at issue here.[15]

## B.  *Procedural Background*

On July 24, 2014, Plaintiffs filed a verified petition in the Civil District for the Parish of Orleans, asserting claims for fraudulent inducement to contract, violation of Louisiana securities laws, and breach of contract.[16]  Weyand removed the action to this Court on November 3, 2014, alleging that removal was proper because Plaintiffs had fraudulently joined or misjoined their claims against him with their claims against the other defendants, and because this Court has diversity jurisdiction over Plaintiffs' claims against him.[17]

---

[11]  *Id.*

[12]  *Id.* at pp. 5–6.

[13]  *Id.* at p. 6.

[14]  Rec. Doc. 1-3 at p. 2.

[15]  Rec. Doc. 1-3 at p. 2, 6.

[16]  *Id.* at pp. 6-8.

[17]  *Id.* at p. 1.

On November 5, 2014, Blackburn filed a "Motion to Dismiss Under Rule 9(b) and Rule 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995."[18]  Plaintiffs filed the instant"Motion for Remand and for Attorney's Fees" on November 7, 2014.[19] On November 19, 2014,Weyand filed a "Rule 9(b) F.R.C.P. and State Law Pleading Objections to Pleading Defects in Plaintiffs' Original Petition [and] Rule 12, F.R.C.P. Defenses and Motions and Memorandum in Support Thereof."[20] Weyand filed an opposition to the motion to remand on December 2, 2014.[21]

On January 12, 2015, Plaintiffs filed a "Motion to Continue," requesting that the hearing on Blackburn's motion to dismiss be continued until the Court addressed the pending motion to remand.[22] On January 13, 2015, Plaintiffs filed a combined opposition to both motions to dismiss, requesting leave of Court to supplement the opposition in the event that the Court denied the pending motion to remand.[23] Also on January 13, 2015, Plaintiffs filed a "Motion to Amend," requesting leave of Court to amend their motion to continue so that it also requested that the hearing on Weyand's pending motion be continued.[24] On January 14, 2014, the Court granted Plaintiffs' motion to continue, deferring the submission of Weyand's motion until the Court ruled on the

---

[18]  Rec. Doc. 4.

[19]  Rec. Doc. 7.

[20]  Rec. Doc. 16.

[21]  Rec. Doc. 17.

[22]  Rec. Doc. 19.

[23]  Rec. Doc. 21.

[24]  Rec. Doc. 20.

motion to remand.[25] On January 16, 2015, the Court granted Plaintiffs' motion to amend, deferring the submission of both Weyand's motion and Blackburn's motion until the Court ruled on the motion to remand.[26]

## II. Parties' Arguments

A.      *Weyand's "Notice of Removal"*[27]

In his "Notice of Removal," Weyand asserts that this litigation was properly removed because Plaintiffs "did not properly join the local defendants to the Plaintiffs' claims against [him]."[28] Therefore, Weyand asserts, the Court should disregard the citizenship of these defendants for diversity purposes pursuant to the "doctrines of fraudulent joinder and fraudulent misjoinder."[29] Citing and applying the Eleventh Circuit's *Tapscott v. MS Dealer Service Corp.* decision,[30] which he calls the "leading case in the nation on the subject of fraudulent misjoinder," Weyand contends that Louisiana's joinder rules should apply here, and that misjoinder has occurred under these rules, because Plaintiffs' claims against him "are not within the jurisdiction of any Louisiana state court."[31] Specifically, Weyand argues that Louisiana courts lack personal jurisdiction over him, because: (1) he has never entered Louisiana to meet with Plaintiffs in connection with the transaction at issue

---

[25]  Rec. Doc. 22.

[26]  *Id.*

[27]  Rec. Doc. 1.

[28]  *Id.* at p. 3. By "local defendants," Weyand appears to refer to the defendants alleged to be citizens of Louisiana.

[29]  *Id.*

[30]  77 F.3d 1153, 1160 (11th Cir. 1996).

[31]  *Id.* at p. 5.

here; (2) he communicated with James Sticker Jr. only by telephone and e-mail before the transactions occurred, and was located in Texas when he did so; (3) he "has never communicated" with Sticker Synergy Corporation or Baker Energy, or with Gavin Baker, who verified Plaintiffs' state court petition; (4) he did not communicate with James Sticker, Jr., Sticker Synergy Corporation, Gavin Baker, or Baker Energy LLC "at any time" regarding their potential purchase of Treaty stock; (5) he has never maintained a personal office in Louisiana, and has not had regular and systematic contacts with the state for about 44 years.[32]

Weyand asserts that the misjoinder asserted here is "egregious and fraudulent," because Plaintiffs' verified petition alleges that Louisiana state courts have personal jurisdiction over him, on the basis that he "personally came into Orleans Parish" and committed the misconduct alleged in the petition.[33] Weyand maintains that these allegations, and in particular the allegation in Section 12 of the petition that "the facts and circumstances giving rise to this action took place in Orleans Parish . . . [are] simply false," and therefore amount to a "fraudulent allegation of jurisdictional facts."[34] In these circumstances, Weyand argues, this Court should "pierce the pleadings" and allow discovery on the issue of "fraudulent joinder / misjoinder," so that it may thereafter resolve the issue using summary judgment-type evidence.[35]

---

[32] *Id.* at pp. 6–7.

[33] *Id.* at pp. 7–8.

[34] *Id.* at p. 8.

[35] *Id.* at p. 9.

B.      *Plaintiffs' "Motion for Remand and Attorney's Fees"*[36]

In their "Motion for Remand and for Attorney's Fees," Plaintiffs argue that "there is no reasonable basis to support removing this case," because Plaintiffs and "at least five out of the seven defendants" are domiciled in Louisiana, and because Plaintiffs' state court petition "only states Louisiana causes of action."[37] Plaintiffs further maintain that removal of this case was "dilatory, evasive, and improper," warranting the imposition of attorney's fees pursuant to 28 U.S.C. § 1447(c).[38]

### 1.      Subject Matter Jurisdiction

According to Plaintiffs, Defendants Blackburn, Gwyn, and Reid are Louisiana domiciliaries, while Rampant Leon and RLFC Buckelew are Louisiana entities.[39] Further, Plaintiffs maintain, Treaty is a Nevada corporation with its principal place of business in Louisiana.[40] Plaintiffs aver that because they are themselves domiciled in Louisiana, and because these defendants are also citizens of Louisiana, complete diversity of citizenship is lacking here. Plaintiffs further contend that their case presents no federal question, because they have asserted only state law claims.[41]

### 2.      Fraudulent Joinder

Plaintiffs further argue that the Louisiana defendants in this case have not been "fraudulently misjoined" to defeat removal, because their complaint "allege[s] violations of Louisiana law that

---

[36]  Rec. Doc. 7.

[37]  Rec. Doc. 7-1 at p. 1.

[38]  *Id.* at p. 2.

[39]  *Id.* at pp. 3; 5.

[40]  *Id.*

[41]  *Id.*

lead to joint, solidary, and personal liability against the Louisiana defendants and Weyand."[42] According to Plaintiffs, their petition asserts causes of action against all defendants, including a cause of action pursuant to LA. REV. STAT. § 51:712, the violation of which exposes defendants to joint and several liability.[43] Plaintiffs characterize Weyand's asserted basis for removal as "remarkable," on the grounds that their petition alleges Weyand's "material participation" in the investment transaction at issue here.[44] Specifically, Plaintiffs contend, their petition alleges that Weyand was "the salesman" in the transaction by virtue of his providing documents related to the wells, his equity interests in the entities involved, and his role in setting up and "materially participating" in a New Orleans meeting regarding the investment.[45]

Plaintiffs further maintain that a claim of "improper joinder" is "by definition" concerned with the joinder of an in-state party, whereas Weyand here argues that he was improperly joined because he was an out-of-state party.[46] Plaintiffs contend that notwithstanding this "basic problem," Weyand has not carried his "heavy burden" of showing improper joinder, because he argues only that Louisiana state courts lack personal jurisdiction over him.[47] Plaintiffs argue that Weyand's argument on this point is unavailing, because he "admits to having direct contact" with James Kenneth Sticker in Louisiana via telephone and e-mail before the transactions at issue occurred.[48]

---

[42] *Id.* at p. 4.

[43] *Id.*

[44] *Id.* at pp. 4-5.

[45] *Id.* at pp. 5–6.

[46] *Id.*

[47] *Id.* at pp. 6–7.

[48] *Id.* at p. 7.

Plaintiffs maintain that this communication was purposefully directed toward Louisiana, and that their claims arise out of those activities, giving Louisiana courts personal jurisdiction over Weyand.[49]

Plaintiffs additionally argue that although Weyand denies his involvement in "any meeting with Plaintiffs and Defendants," he nonetheless admits to corresponding via e-mail with Sticker regarding the meeting in New Orleans.[50] According to Plaintiffs, this correspondence prevents Weyand from carrying his burden of showing that he was fraudulently joined, and also establishes the minimum contacts necessary to establish personal jurisdiction in Louisiana courts.[51] Plaintiffs further maintain that Louisiana courts' exercise of personal jurisdiction over Weyand will not offend traditional notions of fair play and substantial justice, because: (1) Louisiana has a "strong interest in adjudicating this suit between Louisiana plaintiffs" seeking damages "for actions and omissions that occurred in Louisiana;" (2) "Louisiana has a strong interest in discouraging securities fraud;" and (3) Defendants, Weyand included, "had fair warning that they might eventually be sued in Louisiana and be subject to its jurisdiction" when they accepted investment funds from Louisiana domiciliaries.[52]

---

[49] *Id.*

[50] *Id.*

[51] *Id.* at 8.

[52] *Id.* Plaintiffs also aver that Weyand "has a history of being sued for alleged fraud," and has unsuccessfully contested personal jurisdiction in another Louisiana case. *Id.* at pp. 8–9.

### 3.    Jurisdictional Discovery

Plaintiffs next argue that jurisdictional discovery is not necessary here, and characterize "Weyand's request for discovery on the issue of his own contact" with Louisiana as "bizarre."[53] According to Plaintiffs, jurisdictional discovery may be appropriate where a diverse defendant requires evidence related to a non-diverse defendant, but is not warranted here, because Plaintiffs' verified petition alleges Weyand's involvement in the New Orleans meeting, and because Weyand admitted to communicating with Sticker.[54]

### 4.    Attorney's Fees

Finally, Plaintiffs argue that because "there is no reasonable basis to remove this case," an award of attorney's fees is appropriate here.[55] Plaintiffs contend that their claims against the Louisiana defendants are "central to this case," and that "Weyand has made no showing that those defendants were joined in order to defeat diversity."[56] Rather, Plaintiffs contend, Weyand argues that he was improperly joined due to a lack of personal jurisdiction, and seeks discovery "on his own contact with Plaintiffs and the State of Louisiana."[57] Plaintiffs aver that they "put Weyand on full notice" that there was no federal jurisdiction in this matter, and further maintain that Weyand was "well aware" that Louisiana courts had personal jurisdiction over him due to his contacts with Plaintiffs.[58] Plaintiffs maintain that they should be awarded $5,647.50 in attorney's fees for the time

---

[53] *Id.* at p. 10.

[54] *Id.* at pp. 10–11.

[55] *Id.* at p. 11.

[56] *Id.*

[57] *Id.*

[58] *Id.* at p. 12.

spent seeking remand in this case, and urge the Court to order Weyand to submit a bond and security in the amount of those fees.[59]

## C.   *Weyand's Opposition*[60]

### 1.   Fraudulent Joinder

#### a.   Fraudulent Joinder Due to Failure to State a Claim

In opposition to remand, Weyand first contends that Plaintiffs have fraudulently joined "the resident defendants" because Plaintiffs' verified petition fails to plead with particularity the details of the fraudulent conduct at issue here.[61] Specifically, Weyand argues, the petition: (1) "fail[s] to specify the date or dates of the communications, the identities of the parties seeking investment, the language used by the particular defendant, and where the communication(s) occurred;" (2) improperly "lump[s] multiple defendants together in the same allegation of fraud;" and (3) uses "speculative and conclusory phrases while simultaneously failing to set forth a factual basis for the Plaintiffs' alleged beliefs."[62] Consequently, Weyand argues, the instant motion should be denied because Plaintiffs' petition "fails to state a claim under Louisiana pleading standards," and therefore "renders fraudulent the Plaintiffs' joinder of the resident defendants" on its fraud claims.[63]

#### b.   Fraudulent Joinder Due to False Allegations

Weyand next asserts that Plaintiffs have improperly joined their allegations of fraudulent inducement and Louisiana securities law claims with their claims against him because: (1) "only

---

[59] *Id.*

[60] Rec. Doc. 17.

[61] *Id.* at p. 11.

[62] *Id.* at pp. 11–14.

[63] *Id.* at p. 14.

11

these two referenced claims are common to the resident defendants and Weyand;" and (2) "the plaintiffs knew or should have known" the falsity of their allegation that Weyand committed the acts or omissions at issue in Orleans Parish.[64] Indeed, Weyand argues, "Plaintiffs have failed to offer even one scrap of evidence to prove that Weyand was ever actually present in Orleans Parish or anywhere else in Louisiana on any matter having to do with the matters in dispute in the case at bar."[65] Therefore, Weyand contends, Plaintiffs joined him in bad faith, warranting the denial of the instant motion.

### c.   *Tapscott* **Fraudulent Misjoinder**

Weyand also reavers that Plaintiffs "have engaged in improper or fraudulent misjoinder," because Louisiana courts lack personal jurisdiction over him, for the same reasons given in his Notice of Removal.[66]

### 2.   **Attorney's Fees**

Finally, Weyand contends that Plaintiffs should not be awarded attorney's fees, because attorney's fees are only available where a removing defendant lacks an "objectively reasonable basis to seek removal," and because he had such a reasonable basis to seek removal.[67]

### III. Standard on a Motion to Remand

Pursuant to the applicable removal statute, a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[.]"[68]

---

[64] *Id.* at pp. 13–14.

[65] *Id.* at p. 15.

[66] *Id.* at pp. 15–21.

[67] *Id.* at p. 21.

[68]   28 U.S.C. § 1441(a).

Because removal raises significant federalism concerns, the removal statutes are strictly and narrowly construed, with any doubt resolved against removal and in favor of remand.[69] In short, any doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction.[70] construes the removal statute, and resolves "any doubt about the propriety of removal . . . in favor of remand."[71] Motions to remand from a federal district court to a state court are governed by 28 U.S.C. § 1447(c), which provides, in part, that: "If at any time before the final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."[72] A defendant seeking removal has the burden of showing that removal is proper.[73]

## IV. Law and Analysis

### A.   *Diversity Jurisdiction*

Weyand, the removing party in this case, asserts that this Court has subject matter jurisdiction over Plaintiffs' claims against him pursuant to 28 U.S.C. § 1332, which provides that federal courts have original subject matter jurisdiction in cases "where the matter in controversy exceeds the sum or value of $75,000" and the dispute is "between citizens of different states."[74] To remove a case  on diversity grounds, "the diverse defendant must demonstrate that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied."[75] Normally,

---

[69]   *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008).

[70]   *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014) (citations omitted).

[71]   *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007) (citations omitted).

[72]   28 U.S.C. § 1447(c).

[73]   *St. Paul Reinsur. Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) (citations omitted).

[74]   28 U.S.C. § 1332(a)(1).

[75]   *Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004) (en banc).

removal based upon diversity of citizenship is proper only "if there is complete diversity between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum State."[76]

Here, it is undisputed that complete diversity is lacking. With the exception of Weyand, who is alleged to be a Texas domiciliary, Plaintiffs and all defendants are alleged to be citizens of Louisiana.[77] It is also undisputed that Plaintiffs' state court petition alleges only state-law causes of action, precluding federal question jurisdiction pursuant to 28 U.S.C. § 1331. Therefore, unless some exception to 28 U.S.C. § 1441(a) applies, the instant motion should be granted, because this Court lacks original jurisdiction. Attempting to avoid this result, Weyand argues that he was fraudulently joined to Plaintiffs' action against the non-diverse defendants, and that this Court would have diversity jurisdiction over Plaintiffs' claims against him pursuant to 28 U.S.C. § 1332, but for Plaintiffs' fraudulent joinder.[78]

### 1.    Improper or Fraudulent Joinder[79]

#### a.    Legal Standard

"The improper joinder doctrine constitutes a narrow exception to the rule of complete diversity."[80] A party seeking removal based upon a theory of improper, or fraudulent, joinder "bears

---

[76] *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005).

[77] Rec. Doc. 1–3 at pp. 1–2; Rec. Doc. 1 at p. 3 ("Although the instant Louisiana Plaintiffs have joined claims against six Louisiana corporate and individual defendants with Plaintiffs' claims against Defendant Weyand, a diverse defendant . . .").

[78] Rec. Doc. 1 at pp. 1–2.

[79] These terms are used interchangeably, but the Fifth Circuit holds that "improper joinder" is preferred. *Smallwood*, 385 F.3d at 571 n.1 .

[80] *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005).

a heavy burden of proving that the joinder of the in-state party was improper."[81]  The Fifth Circuit has long recognized two methods of fraudulent joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) [the] inability of the plaintiff to establish a cause of action against the non-diverse party in state court."[82] Weyand contends that both prongs are at issue here, and further contends that a third type of fraudulent joinder is also at issue—"fraudulent misjoinder," which was first adopted by the United States Court of Appeals for the Eleventh Circuit in *Tapscott v. MS Dealer Service Corp.*[83] The Court will address each in turn, starting with the two bases for fraudulent joinder recognized by the Fifth Circuit.

### b.    Analysis: Reasonable Basis for Recovery

In opposition to the instant motion, Weyand initially argues that Plaintiffs have improperly joined the resident defendants, because their state court petition fails to state claims for fraudulent inducement and securities fraud against these defendants.[84] When this type of fraudulent joinder is asserted, "the test is whether there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[85]

When analyzing allegations of improper joinder of this type,  the Fifth Circuit instructs that the Court "may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the

---

[81]  *Smallwood*, 385 F.3d at 574.

[82]  *McDonal*, 408 F.3d at 183; *Smallwood*, 385 F.3d 568, 573 (5th Cir. 2004). *See also Parks v. N.Y. Times Co.*, 308 F.2d 474 (5th Cir. 1962) ("The joinder may be fraudulent if the plaintiff fails to state a cause of action against the resident defendant, and the failure is obvious according to the settled rules of the state. If there is doubt as to whether the plaintiff has stated a cause of action, the joinder is not fraudulent, and the cause should be remanded.").

[83]  77 F.3d at 1360.

[84]  Rec. Doc. 17 at pp. 10–11.

[85]  *Cuevas v. BAC Home Loans Servicing LP*, 648 F.3d 242, 249 (5th Cir. 2011) (citations and internal quotation marks omitted).

complaint to determine whether the complaint states a claim under state law against the in-state defendant."[86] Where "no reasonable basis of recovery exists, a conclusion can be drawn that the plaintiff's decision to join the local defendant was indeed fraudulent, unless that showing compels dismissal of all defendants."[87] Alternatively, in cases where a plaintiff "has misstated or omitted discrete facts that would determine the propriety of joinder," a district court "may, in its discretion, pierce the pleadings and conduct a summary inquiry."[88] However, as this Court has previously observed, such an inquiry "is not favored,"[89] because it poses a "heavy risk of moving the court beyond jurisdiction and into a resolution of the merits."[90] Regardless of its chosen method of inquiry, however, the Court resolves contested issues of fact and ambiguities in state law in the plaintiff's favor.[91]

On a motion pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court accepts as true a plaintiff's well-pleaded factual allegations, and views those allegations in the light most favorable to the plaintiff.[92] Dismissal pursuant to Rule 12(b)(6) is appropriate where "the plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face or has failed to raise its

---

[86] *Smallwood*, 385 F.3d 568.

[87] *McDonal*, 408 F.3d at 183.

[88] *Id.*

[89] *Andrews v. AMERCO*, 920 F.Supp.2d 696, 704 (E.D. La. 2013) (Brown, J.); *Kennedy* et al. *v. Croft, LLC* et al. No. 13-43, Rec. Doc. 28, 2013 WL 3364388 at *3-*4 (E.D. La. July 3, 2013) (Brown, J).

[90] *Andrews*, 920 F.Supp.2d at 704 (quoting *Smallwood*, 385 F.3d at 573-74); *Kennedy*, 2013 WL 3364388 at *3-*4 (quoting *Smallwood*, 385 F.3d at 573-74).

[91] *Cuevas*, 648 F.3d at 249.

[92] *Raj v. La. State Univ.*, 714 F.3d 322, 329–30 (5th Cir. 2013).

right to relief above the speculative level."[93] A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[94]

Weyand's arguments on this point are ostensibly based upon Plaintiffs' alleged failure to comply with LA. CODE CIV. P. § 856, a Louisiana pleading rule which states that:

> In pleading fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with particularity. Malice, intent, knowledge, and other condition of mind of a person may be alleged generally.

Although Weyand contends that this rule dooms Plaintiffs' claims against the Louisiana defendants, Weyand cites no Louisiana authority construing the Rule. Rather, Weyand contends that LA. CODE CIV. P. § 856 is "based on Rule 9(b) of the Federal Rules of Civil Procedure," and maintains, without citing any Louisiana authority, that federal cases construing and applying Rule 9(b) are therefore applicable "by identical logic" to an inquiry under LA. CODE CIV. P. § 856, and show that Plaintiffs fail to state a claim under Louisiana law. Although Louisiana courts have acknowledged that Federal Rule of Civil Procedure 9(b) is the "source" of LA. CODE CIV. P. § 856,[95] Weyand cites no authority establishing that LA. CODE CIV. P. § 856, as applied in Louisiana courts, would preclude Plaintiffs from recovering against the Louisiana defendants. In light of Weyand's failure to cite a single Louisiana decision construing and applying LA. CODE CIV. P. § 856 in the first instance, much less any authority addressing that Rule's application to allegations such as those at issue here, the nature and effect of applicable Louisiana law remains, at best, ambiguous. Where

---

[93] *Id.*

[94] *Id.*

[95] *Kizer v. Lilly*, 471 So.2d 716, 721 n.1 (La. 1985).

17

fraudulent joinder is asserted, this Court resolves ambiguities in state law in the plaintiff's favor.[96] Accordingly, Weyand's arguments on this point are unavailing.

Even assuming that Weyand's Rule 9(b) analogy establishes that Plaintiffs had no reasonable basis of recovery against the Louisiana defendants, Weyand has failed to show how the result would be any different with respect to Plaintiffs' fraudulent inducement and securities fraud claims against him. This failure renders his fraudulent joinder arguments unavailing, because, as the Fifth Circuit instructs "there is no improper joinder if a defense compels the same result for the resident and nonresident defendants, because this would simply mean that the plaintiff's case is ill founded as to all the defendants."[97]

Here, Plaintiffs assert fraudulent inducement and Louisiana securities claims against all defendants, including Weyand.[98] Although Weyand's LA. CODE CIV. P. § 856 arguments are addressed to Plaintiffs' assertion of these claims against the Louisiana defendants, he has not identified how these arguments, if meritorious, would lead to a different result as to him. Thus, it appears that Weyand's fraudulent joinder argument is actually an attack on the merits of the claim, rather than an attack on the propriety of the Louisiana defendants' joinder. For this independent reason, his improper joinder arguments are unavailing.  For the foregoing reasons, Weyand has failed to carry his "heavy burden" of showing that "no reasonable basis of recovery exists" under Louisiana law.

---

[96] *Cuevas*, 648 F.3d at 249.

[97] *McDonal*, 408 F.3d at 183. *See also Smallwood*, 385 F.3d at 574 ("[W]hen, on a motion to remand, a showing that compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no improper joinder; there is only a lawsuit lacking in merit. In such cases, it makes little sense to single out the in-state defendants as 'sham' defendants and call their joinder improper.").

[98] Rec. Doc. 1-3 at pp. 6–7.

### c.      Analysis: Actual Fraud

Weyand also asserts that removal was appropriate here, because: (1) "only" the fraudulent inducement and Louisiana Securities claims "are common to the resident defendants and Weyand;" and (2) Plaintiffs made false allegations in Paragraph 12 of their state court petition.[99] Paragraph 12 of Plaintiffs' petition states, in full, that:

> Jurisdiction and venue are proper in Orleans Parish under the Louisiana Code of Civil Procedure because the facts and circumstances giving rise to this action took place in Orleans Parish, namely: the investment contracts at issue were executed by the parties in Orleans Parish.[100]

According to Weyand, these allegations are "simply false," and Plaintiffs "know it."[101] Indeed, he maintains, he was never "actually present in Orleans Parish or anywhere else in Louisiana on any matter having to do with the matters in dispute in the case at bar."[102] To refute these allegations, Weyand requests that the Court allow jurisdictional discovery and conduct a hearing with "summary judgment-type evidence such as affidavits and testimony."[103]

The issue of actual fraud in the pleadings does not appear to be widely litigated, limiting the availability of applicable Fifth Circuit authority on point. However, the Fifth Circuit has indicated that actual fraud may exist where a plaintiff falsely represents the citizenship of a party.[104]

---

[99]  Rec. Doc. 1 at p. 8.

[100]  Rec. Doc. 1-3 at p. 2.

[101]  Rec. Doc. 1 at p. 8.

[102]  Rec. Doc. 17 at p. 15.

[103]  *Id.* at p. 21.

[104]  The parties do not cite, and the Court has not located, a single case in which the Fifth Circuit has expressly defined, or actually found, "actual fraud" in the pleadings. However, the Fifth Circuit has briefly addressed this prong in passing, and has indicated that false allegations of citizenship may constitute actual fraud. *See Cavallini v. State Farm Mut. Auto Ins.* Co., 44 F.3d 256, 259 (5th Cir. 1995) ("Because no one disputes that the Cavallinis and Cunningham are Texas residents, our sole concern is whether there is a possibility that the Cavallinis have set forth a valid cause of action

Both parties have submitted affidavits and exhibits in connection with the instant motion,[105] and Weyand includes a summary of his affidavit in opposition to the motion.[106]  As noted above, the Fifth Circuit has held that district courts may "pierce the pleadings and conduct a summary inquiry" in cases where plaintiffs have "misstated or omitted discrete facts that would determine the propriety of joinder."[107]  The decision to do so, however, is in the sound discretion of the Court,[108] and the procedure is not favored.[109]  Further, the purpose of any such inquiry is to "identify discrete and undisputed facts that would preclude [the] plaintiff's recovery against the in-state defendant," rather than to determine the "motive or purpose of the joinder of in-state defendants."[110]

Here, it is unnecessary to pierce the pleadings and conduct a summary inquiry, because Weyand has not pointed to any facts that, if analyzed in a summary inquiry, would preclude Plaintiffs from recovering against the Louisiana defendants. First, Weyand appears to argue that a summary inquiry into the truth of Paragraph 12 of Plaintiffs' petition should be held in order to determine whether he was present in Orleans Parish at the time that the transaction at issue here

---

against Cunningham.") (citations, internal brackets, and internal quotation marks omitted); *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983) ("Because the parties have admitted that [the plaintiff] and [a defendant] are Mississippi residents, Green's pleadings of jurisdictional facts are obviously not fraudulent."); *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 n.8 (5th Cir. 1981) ("There have been no allegations of fraud in the plaintiff's pleading of jurisdictional facts. All parties concede that the plaintiff and four of the named defendants are Texas residents. Therefore, in order to defeat the plaintiff's motion for remand, the defendants in this case must show that the plaintiff could not establish a cause of action against any one of the named Texas defendants as a matter of law.").

[105]  *See* Rec. Doc. 7-2; Rec. Doc. 7-3; Rec. Doc. 7-4; Rec. Doc. 7-5; Rec. Doc. 7-6; Rec. Doc. 7-7; Rec. Doc. 7-8; Rec. Doc. 17-1.

[106]  Rec. Doc. 17 at pp. 5–10.

[107]  *McDonal*, 408 F.3d at 183.

[108]  *Smallwood*, 385 F.3d at 573.

[109]  *Andrews*, 920 F.Supp.2d at 704; *Kennedy*,  2013 WL 3364388 at *3–*4.

[110]  *Smallwood*, 385 F.3d at 573.

occurred. However, "the purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined."[111] Weyand does not explain how his physical presence in Orleans Parish would have any impact on this inquiry.[112] Second, Weyand also asserts, as an apparent alternative basis for a finding of fraudulent joinder, that "only two" of Plaintiffs' claims "are common to the resident defendants."[113] However, Weyand does not cite, and the Court has not found, any case suggesting that the number of claims asserted against in-state and diverse defendants has any bearing whatsoever on the fraudulent joinder inquiry.

For the foregoing reasons, Weyand has failed to identify any shortcomings or falsehoods in the pleadings that, if refuted following discovery and summary proceedings, would allow him to carry his "heavy burden" of proving improper joinder.[114] Thus, to the extent that Weyand seeks discovery and summary proceedings, his request is denied. Further, insofar as Weyand supports removal and opposes remand on the basis of the arguments discussed above, his arguments are unavailing.

---

[111] *Id.*

[112] To the extent that the Fifth Circuit has addressed "actual fraud" allegations, the Court has indicated that fraudulently-pled jurisdictional facts related to the non-diverse defendants may support a finding of fraudulent joinder. *See B., Inc.*, 663 F.2d at 549 n.8; *Green*, 707 F.2d at 205. Here, however, Weyand contends that Plaintiffs have fraudulently pled facts about him, a diverse party. Weyand has not pointed to, and the Court has not found, any case indicating that the physical presence of a diverse party in the forum state would be determinative of the fraudulent joinder inquiry.

[113] Rec. Doc. 17 at p. 15.

[114] Weyand's cited cases on this point do not appear to be applicable here. In both *Ford v. Elsbury*, 32 F.3d 931, 938-39 (5th Cir. 1994) and *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 101-2 (5th Cir. 1990), cited by Weyand, the Fifth Circuit found evidence adduced by the parties to be relevant to the issue of improper joinder. Here, Weyand has provided the Court with no basis to conclude that evidence should be considered in the first place.

### d.      Analysis: *Tapscott* Fraudulent Misjoinder

Weyand also asserts that the doctrine of fraudulent misjoinder first set forth in the Eleventh Circuit's *Tapscott* decision supports removal here, because: (1) Louisiana courts lack personal jurisdiction over him, making him a misjoined party under Louisiana law; and (2) his purported misjoinder is "egregious and fraudulent," because it is premised, in part, on the allegation that Weyand was physically present in Orleans Parish  at the time of the transaction at issue here.[115] Plaintiffs counter that fraudulent misjoinder has not occurred because: (1) they allege claims for joint, solidary, and personal liability against the Louisiana defendants and Weyand; (2) their allegations against the Louisiana defendants are "central to Plaintiff's case;" and (3) Louisiana courts may exercise personal jurisdiction over Weyand.[116]

In *Tapscott*, the Eleventh Circuit noted that under Federal Rule of Civil Procedure 20, joinder of defendants is proper when "(1) a claim for relief assert[s] joint, several, or alternative liability and aris[es] from the same transaction, occurrence, or series of transactions or occurrences, and (2) [contains] a common question of law or fact."[117] The Eleventh Circuit then concluded that:

> Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action. A defendant's right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy. We hold that the district court did not err in finding an attempt to defeat diversity jurisdiction by fraudulent joinder. We do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder.[118]

---

[115]  Rec. Doc. 17 at pp. 17–20.

[116]  *Id.* at pp. 4-9.

[117]  77 F.3d at 1360.

[118]   *Id.* (emphasis added).

The *Tapscott* rule holds that fraudulent misjoinder may have occurred where a diverse defendant is joined with a nondiverse defendant with whom it does not have joint, several or alternative liability, and the claims brought against the nondiverse defendant have no real connection to claims brought against the diverse defendant.[119] However, only the "egregious" misjoinder of parties with no real connection to each other, and not "mere" misjoinder, constitutes fraudulent joinder.[120] Stated differently, *Tapscott* misjoinder applies only where the connection between the claims against the individual parties is so tenuous that disregarding the citizenship of the joined parties is just, or when there is no palpable connection between the claims and parties.[121]

The Fifth Circuit has yet to expressly adopt the theory of "fraudulent misjoinder," but has mentioned it in several cases.[122] Many district courts within the Fifth Circuit—including this Court—have applied the theory of fraudulent misjoinder, reasoning that the Fifth Circuit has indicated its willingness to adopt the theory.[123] Accordingly, the Court applies the *Tapscott* theory of fraudulent misjoinder to the present case.

---

[119]   *Id.*

[120]   *Id.*

[121]   *See Kennedy*,  No. 13-0043, 2013 WL 3364388, at *3 (E.D. La. July 3, 2013) (Brown, J.).

[122]   *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529 (5th Cir. 2006) (*citing Tapscott* in stating that  "[t]he fraudulent joinder exception to the voluntary-involuntary rule is designed to prevent plaintiffs from blocking removal by joining nondiverse and/or instate defendants who should not be parties. That salutary purpose is also served by recognizing an exception to the voluntary-involuntary rule where defendants are improperly . . . joined"); *In re Benjamin Moore & Co.*, 318 F.3d 626, 630-31 (5th Cir. 2002) (holding that the court did not have jurisdiction to issue a writ of mandamus and stating that its decision did not "detract[] from the force of the *Tapscott* principle that fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction").

[123]   *See Kennedy,*  No. 13-43, 2013 WL 3364388, at *4 (E.D. La. July 3, 2013). *See also  Fine v. State Farm Fire and Cas. Co.*,  No. 15-80, 2015 WL 1810138, at *2 (E.D. La. Apr. 21, 2015) (applying *Tapscott*); *Kahn Swick & Foti, LLC v. Spector Roseman Kodroff & Willis, PC*,  No. 14-1979, at *3 (E.D. La. Dec. 12, 2014) (same); *J.O.B. Investments, LLC v. Gootee Serv., LLC*, 908 F. Supp. 2d 771, 775-76 (E.D. La. 2012) (same).

Courts differ regarding whether the state or federal rules determine the propriety of joinder in a removal analysis.[124] Courts that have applied state joinder rules have done so because: (1) applying state joinder rules "shares the same conceptual rationale underlying the doctrine of fraudulent joinder," in which "federal courts look to the substantive law of the state in which an action was brought to determine if a plaintiff is unable to state a claim against a nondiverse defendant;" and because (2) "plaintiffs brought their actions in state court and were required to follow state joinder rules when they did so," making state joinder rules "the relevant ones to determine the propriety of the joinder of plaintiffs and/or defendants after removal to federal court."[125]   The court finds these reasons persuasive, and accordingly will apply state joinder principles here.

Pursuant to LA. CODE CIV. P. art. 461, "Cumulation of actions is the joinder of separate actions in the same judicial demand, whether by a single plaintiff against a single defendant, or by one or more plaintiffs against one or more defendants."   Pursuant to LA. CODE CIV. P. art. 463, parties may be joined in the same suit if: (1) there is a community of interest between the joined parties, (2) the cumulated actions are within the court's jurisdiction and venue is properly laid, and (3) the actions are mutually consistent and employ the same form of procedure.[126]

---

[124] *See Davis v. Cassidy*, No. 11-1563, 2011 WL 6180054 (E.D. La. Dec. 13, 2011) (Vance, J.)  ("As plaintiff here brought her action in state court and was required to follow state joinder rules in so doing, these state rules remain the relevant ones to determine the propriety of joinder in the Court's analysis of whether removal to federal court was warranted."); *Zeber v. E.L. Cretin, L.L..C.*, No.10-89, 2010 WL 5856063 at *3 (E.D. La. Nov. 30, 2010) (collecting cases). *See also Kennedy*, No. 13-43, 2013 WL 3364388 at *6 (considering both state and federal standards, and finding that the result would be the same under each).

[125] *Accardo v. Lafayette Ins. Co.*,  No. 06-8568, 2007 WL 525358 at *4 (E.D. La. Jan. 30, 2007) (Vance, J.);. *Accord Davis v. Cassidy*, No. 11-1563, 2011 WL 6180054 at *3 (E.D. La. Dec. 13, 2011) (Vance, J.).

[126] LA. CODE CIV. PROC. art. 463.

24

Applying the foregoing rules here, Weyand does not assert that a community of interest is lacking between the joined parties, and does not argue the actions at issue are not mutually consistent or subject to the same form of procedure. Rather, Weyand's sole asserted basis for a finding of fraudulent misjoinder is that Louisiana courts lack personal jurisdiction over him, in violation of LA. CODE CIV. P. art. 463(2).[127] Weyand's briefing on this point, as advanced in his notice of removal and his opposition to the instant motion, consists almost entirely of factual averments and denials without any corresponding citations to applicable legal authority.[128] Although Weyand has also filed a motion to dismiss for lack of personal jurisdiction,[129] hearing on that motion has been continued until the Court decides the instant motion.[130] Therefore, only Weyand's briefing related to the instant motion is properly before the Court.[131] Apart from his citations to LA. CODE CIV. P. arts 1, 2, and 6, rules that merely define "jurisdiction,"[132] "subject matter jurisdiction,"[133] and

---

[127] Rec. Doc. 17 at pp. 17–18.

[128] Elsewhere in his brief and his notice of removal, Weyand cites cases setting forth the general principles of the fraudulent misjoinder doctrine. *See* Rec. Doc. 17 at p. 15 (citing *Tapscott,* 77 F.3d at 1360; *Centaurus Ashley, L.P. v. Lexington Ins. Co.,* 791 F.Supp.2d 559, 566 (S.D. Tex. 2011) (applying *Tapscott* without considering personal jurisdiction). His cited cases, however, do not address the issue of personal jurisdiction.

[129] Rec. Doc. 16.

[130] Rec. Doc. 23.

[131] Where subject matter jurisdiction and personal jurisdiction are both challenged, as they are here, Courts have discretion to consider one challenge before another. *See Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574 (1999) ("[I]n most instances subject-matter jurisdiction will involve no arduous inquiry. In such cases, both expedition and sensitivity to state courts' coequal stature should impel the federal court to dispose of that issue first.").

[132] LA. CODE CIV. P. art. 1 states: "Jurisdiction is the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled."

[133] LA. CODE CIV. P. art. 2 states: "Jurisdiction over the subject matter is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted."

"personal jurisdiction,"[134] respectively, Weyand cites no legal authority related to the issue of personal jurisdiction in Louisiana courts. Accordingly, Weyand's briefing related to the instant motion fails to indicate why, in light of applicable law, Louisiana courts would deem him to be misjoined. He has therefore failed to support his fraudulent misjoinder arguments, and furthermore has failed to identify any basis for discovery or summary proceedings related to that issue.[135] Because Weyand's arguments on this point lack support, it is not necessary to consider whether the alleged misjoinder here is sufficiently egregious to constitute fraudulent joinder.

### 3.    Attorney's Fees

Finally, the parties dispute whether Weyand should be required to pay Plaintiffs' attorney's fees for litigating the instant motion. Plaintiffs contend that Weyand had "no objectively reasonable basis" to remove the action, because he was "well aware" that federal jurisdiction was lacking, and

---

[134]  LA. CODE CIV. P. art. 6 states:

   A.    Jurisdiction over the person is the legal power and authority of a court to render a personal judgment against a party to an action or proceeding. The exercise of this jurisdiction requires:

      (1)    The service of process on the defendant, or on his agent for the service of process, or the express waiver of citation and service under Article 1201.
      (2)    The service of process on the attorney at law appointed by the court to defend an action or proceeding brought against an absent or incompetent defendant who is domiciled in this state.
      (3)    The submission of the party to the jurisdiction of the court by commencing an action or by the waiver of objection to jurisdiction by failure to timely file the declinatory exception.

   B.    In addition to the provisions of Paragraph A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and with the Constitution of the United States.

[135]  Plaintiffs point out that they assert a claim for joint and solidary liability against Weyand and the Louisiana defendants, and emphasize that their allegations against the Louisiana defendants are "central" to their case. Rec. Doc. 7-1 at pp. 4–8. Weyand does not address these arguments, and the Court, finding Weyand's sole fraudulent misjoinder argument unavailing, need not consider them. Plaintiffs also indicate that Weyand has unsuccessfully litigated the issue of personal jurisdiction of Louisiana courts in the past, and has also previously been sued for alleged fraud. Rec. Doc. 7-1 at pp. 8–9. The Court is at a loss to determine how, if at all, these allegations are relevant here.

also aware "of his purposeful contact" with them "by way of telephone calls, emails, and involvement in meeting them in Louisiana."[136] Plaintiffs further assert that Weyand "has already tried and lost a substantially identical personal jurisdiction argument."[137] Weyand counters that his bases for removal are reasonable.[138]

Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The decision to award attorney's fees under Section 1447(c) is in the sound discretion of the Court, and should:

> [R]ecognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.[139]

Toward that end, the "mere determination that removal was improper" does not automatically entitle a plaintiff to an award of fees.[140] Rather, in the absence of "unusual circumstances," this Court may award attorney's fees under Section 1447(c) "only where the removing party lacked an objectively reasonable basis for seeking removal."[141]

Applying these rules here, the Court has found Weyand's arguments in support of removal unavailing. However, a party's mere advancement of unsuccessful arguments in support of removal

---

[136] Rec. Doc. 7-1 at pp. 11–12.

[137] *Id.* at p. 12.

[138] Rec. Doc. 17 at p. 21.

[139] *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

[140] *Am. Airlines, Inc. v. Sabre, Inc.*, 694 F.3d 539, 541–42 (citations omitted).

[141] *Id.* at 542 (citations omitted).

does not warrant the imposition of attorney's fees.[142] Further, although Plaintiffs assail Weyand's request for jurisdictional discovery and aver that Weyand has unsuccessfully litigated the issue of personal jurisdiction in other cases,[143] these assertions do not indicate that Weyand lacked an objectively reasonable basis to remove this action, or that he removed this action in order to "prolong[] litigation and impos[e] costs."[144] Therefore, although the Court will remand the instant action to state court, it will not award attorney's fees here.

## IV. Conclusion

In addressing a motion to remand, this Court resolves "any doubt about the propriety of removal,"[145] including contested issues of fact and ambiguities in state law, in favor of remand.[146] In this inquiry, the removing party has the burden of showing that removal is proper.[147] Here, it is undisputed that Plaintiffs allege no federal cause of action, and further undisputed that diversity of citizenship does not exist, absent a finding of fraudulent joinder. Therefore, the instant motion addresses whether three different bases for fraudulent joinder apply. For the reasons stated above, and summarized below, this Court concludes that they do not.

Weyand's fraudulent joinder arguments are unavailing, for several reasons. First, Weyand failed to provide any Louisiana authority in support of his assertion that Plaintiffs failed to state a claim against the Louisiana defendants under Louisiana state law. Second, even if Weyand had

---

[142] *Id.*

[143] Rec. Doc. 7-1 at p. 11.

[144] *Martin*, 546 U.S. at 141.

[145] *Gasch*, 491 F.3d at 281-82 (citations omitted).

[146] *Cuevas*, 648 F.3d at 249.

[147] *Vantage Drilling Co.*, 741 F.3d at 537(citations omitted).

shown that Plaintiffs failed to state a claim against the Louisiana defendants under Louisiana law, he has failed to show how the result would be any different as to Plaintiffs' claims against him. Thus, Weyand has attacked the merits of Plaintiffs' claims in general, rather than the propriety of this Court's jurisdiction over the Louisiana defendants in particular. Such arguments are improper in the fraudulent joinder analysis. Third, Weyand contends that "actual fraud" in the pleadings occurred, because he was never present in Orleans Parish at the time the transaction at issue here occurred. He requests jurisdictional discovery related to this allegation. He fails, however, to explain the relationship between this disputed fact and his assertion of fraudulent joinder. Finally, Weyand indicates that "only two" of Plaintiffs' claims are asserted against both him and the Louisiana defendants, but fails to show how this has any significance in the fraudulent joinder inquiry.

Weyand also urges the Court to find that he was fraudulently misjoined, because Louisiana courts would lack personal jurisdiction over him. His arguments on this point, however, consist almost entirely of factual averments and denials, without citations to any supporting authority, and are therefore unavailing. For the foregoing reasons, it appears that this Court lacks subject-matter jurisdiction, because complete diversity is lacking, and no basis for fraudulent joinder applies. The Court must therefore remand the instant case to state court.

Finally, although Plaintiffs urge the Court to award attorney's fees, Plaintiffs have not shown that Weyand lacked an objectively reasonable basis to remove the action. Rather, it appears that Weyand has merely advanced unsuccessful arguments in support of removal. Accordingly,

**IT IS HEREBY ORDERED** that the "Motion for Remand and Attorney's Fees"[148] filed by Plaintiffs Sticker Synergy Corporation and Baker Energy, LLC is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that the "Motion for Remand and Attorney's Fees"[149] is **GRANTED** to the extent that it urges the Court to remand the instant case to state court.

**IT IS FURTHER ORDERED** that this action be **REMANDED** to the Civil District Court for the Parish of Orleans.

**IT IS FURTHER ORDERED** that the "Motion for Remand and Attorney's Fees"[150] is **DENIED** to the extent that it requests that the Court award attorney's fees.

**NEW ORLEANS, LOUISIANA**, this __6th__ day of July, 2015.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[148]  Rec. Doc. 7.

[149]  *Id.*

[150]  *Id.*